IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| STEVEN MADDEN, LTD.; B.B. DAKOTA CEJON ACCESSORIES, INC.; DANIEL M. FRIEDMAN & ASSOCIATES, INC.; DOLCE VITA FOOTWEAR, INC.; REPORT FOOTWEAR INC.; STEVEN MADDEN RETAIL, INC.; STEVIES INC.; DIVA ACQUISITION CORP.; and KURT GEIGER LTD., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and THE UNITED STATES OF AMERICA, <br><br> Defendants. | Case No. 25-00793 |

## COMPLAINT

Plaintiffs, Steven Madden, Ltd.; B.B. Dakota Inc.; Cejon Accessories, Inc.; Daniel M. Friedman & Associates, Inc.; Dolce Vita Footwear, Inc.; Report Footwear, Inc.; Steven Madden Retail, Inc.; Stevies Inc.; Diva Acquisition Corp.; Kurt Geiger Ltd., by and through their counsel, hereby allege and state as follows:

### NATURE OF THE ACTION

1. Plaintiffs Steven Madden, Ltd.; B.B. Dakota Inc.; Cejon Accessories, Inc.; Daniel M. Friedman & Associates, Inc.; Dolce Vita Footwear, Inc.; Report Footwear, Inc.; Steven Madden Retail, Inc.; Stevies Inc.; Diva Acquisition Corp.; Kurt Geiger Ltd. ("Plaintiffs") are

Page 1

U.S. importers whose merchandise has been subjected to the duties challenged in this action, and therefore have standing to initiate this action, which is filed pursuant to 19 U.S.C. § 1581(i) because it is a United States Customs and Border Protection ("CBP) tariff issue that does not fall directly under any other enumerated subheading.

2. In February of 2025, President Trump began issuing executive orders invoking the International Emergency Economic Powers Act ("IEEPA") as authority to enact tariffs (collectively, the "IEEPA tariffs"). This statutory authority was invoked for a variety of tariffs, eventually culminating in the application of IEEPA tariffs on imports originating from essentially all foreign countries, including those from which Plaintiffs sources their products.

3. Plaintiffs, as importers of record, are responsible for paying these duties upon entry of their goods.

4. Both this Court and the U.S. Court of Appeals for the Federal Circuit have held that IEEPA does not authorize the imposition of tariffs. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

5. The Supreme Court granted certiorari and heard oral argument in the Supreme Court appeal out of *V.O.S. Selections*, 149 F.4th 1312, as well as an additional appeal from the U.S. District Court for the District of Columbia on November 5, 2025. A decision is anticipated shortly, but with no set deadline for the issuance of such a determination.

6. On December 15, 2025, this Court in *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.* ("*AGS v. CBP*"), entered a denial of a motion for preliminary injunction filed by consolidated plaintiffs that alleged to have paid IEEPA tariffs. Consol. Ct. No. 25-00255, Slip

Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025). In all material respects, *AGS v. CBP* raises the same issues as those faced by Plaintiffs in this action.

7. In the *AGS v. CBP* ruling, this Court determined that the defendants—importers that paid IEEPA tariffs, and therefore in an analogous position as Plaintiffs in this action—are estopped "in this case and … related cases" from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs. *Id.* at 3–5.

8. The Court also stated that CBP is "powerless" to consider a protest filed on the basis that the IEEPA tariffs are potentially unconstitutional, which means that it is not possible for this Court to have jurisdiction under 28 U.S.C. § 1581(a), which is the appeal route for the denial of protests. It therefore determined that this Court has jurisdiction over these types of actions under 28 U.S.C. § 1581(i), due to there being no other potential jurisdictional basis under sections 1581(a)-(h).

9. This Court therefore ruled that filing a section 1581(i) action is the means by which an importer can seek actions as the primary recourse for parties seeking refunds for duties ruled to be illegal and unconstitutional, including in situations where a Court order requiring reliquidation might be needed. *Id.* at 6–7.

10. Accordingly, Plaintiffs file this 28 U.S.C. § 1581(i) action to seek a full refund of all IEEPA tariffs already paid or hereafter paid by Plaintiffs as a result of the challenged executive orders, including through potential action by this Court to order reliquidation in the event that any entries that were subject to IEEPA tariffs liquidate.

11. Plaintiffs additionally seek a declaration that the estoppel determination in the *AGS v. CBP* ruling applies in this matter, and that Defendants are therefore estopped from ob-

jecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs.

## THE PARTIES

12. Plaintiff Steven Madden, Ltd. is a U.S. importer with its principal place of business located in Long Island City, New York.

13. Plaintiff B.B. Dakota Inc. is a U.S. importer with its principal place of business located in Newport Beach, California.

14. Plaintiff Cejon Accessories is a U.S. importer with its principal place of business located in New York, New York.

15. Plaintiff Daniel M. Friedman & Associates, Inc. is a U.S. importer with its principal place of business located in New York, New York.

16. Plaintiff Dolce Vita Footwear, Inc. is a U.S. importer with its principal place of business located in Seattle, Washington.

17. Plaintiff Report Footwear, Inc. is a U.S. importer with its principal place of business located in Bellevue, Washington.

18. Plaintiff Steven Madden Retail, Inc. is a U.S. importer with its principal place of business located in Long Island City, New York.

19. Plaintiff Stevies Inc. is a U.S. importer with its principal place of business located in Long Island City, New York.

20. Plaintiff Diva Acquisition Corp. is a U.S. importer with its principal place of business located in Long Island City, New York.

21. Plaintiff Kurt Geiger Ltd. is a U.S. importer with its principal place of business located in London, United Kingdom.

22. Plaintiffs import merchandise from countries subject to the IEEPA tariffs challenged herein.

23. Defendant CBP is a component of the U.S. Department of Homeland Security headquartered in Washington, D.C., and is responsible for border security and for administering and collecting duties on imported merchandise.

24. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

25. Defendant United States of America received the duties at issue and is the statutory defendant pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

26. Defendants are collectively referred to as "CBP" in this Complaint.

## JURISDICTION

27. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

28. The Court possesses the same powers at law and in equity as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court may enter monetary judgments against the United States and grant other appropriate relief, including declaratory judgments, injunctions, remands, and writs of mandamus or prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

29. Plaintiffs have standing because it is the importer of record for entries subject to duties imposed under the challenged executive orders. Plaintiffs have paid IEEPA tariffs and thus suffered injury. Remedial relief, as well as monetary relief, would redress those injuries.

**GENERAL PLEADINGS**

I. **President Trump Imposes Tariffs Under Claimed IEEPA Authority.**

    A. **President Trump Imposes Fentanyl-Based Tariffs Under Claimed IEEPA Authority**

30. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each order was based upon the asserted role of each country regarding the importation of fentanyl/opioids and related substances into the United States, with the assertion of national-emergency findings in each case. To address these asserted national-emergency findings, the executive orders relied on IEEPA as a governing authority to justify the imposition of the duties. Collectively, these are referred to as the "Fentanyl-Based Tariff Orders."

31. The Mexico-related order, Executive Order 14194, 90 Fed. Reg. 9117, imposed a 25% tariff and was premised on purported emergency conditions at the southern border related to the trafficking of fentanyl/opioids.

32. The Canada-related order, Executive Order 14193, 90 Fed. Reg. 9113, likewise invoked emergency powers relating to fentanyl/opioid trafficking and imposed a 25% tariff.

33. The China-related order, Executive Order 14195, 90 Fed. Reg. 9121, imposed a 10% tariff based on asserted emergency conditions relating to synthetic opioids.

34. On February 5, 2025, the President issued Executive Order 14200 modifying the China tariffs.

35. On March 3, 2025, the President issued Executive Order 14228, 90 Fed. Reg. 11,463, further amending the China tariffs and raising the incremental rate to 20%.

36. Although the Fentanyl-Based Tariff Orders were challenged before this Court and the Federal Circuit, with both Courts holding that IEEPA did not authorize the tariffs at issue, CBP is still collecting all tariffs imposed in these Orders.

### B.     President Trump Imposes Global and Reciprocal Tariffs

37. On April 2, 2025, the President issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), asserting a national emergency based on long-standing trade imbalances between the United States and other countries and imposing a 10% baseline tariff on nearly all imports beginning April 5, 2025, with additional country-specific "reciprocal" tariffs beginning April 9, 2025. Collectively, these are referred to as the "Reciprocal Tariffs."

38. On April 8, 2025, the President issued Executive Order 14259, 90 Fed. Reg. 15,509, increasing the reciprocal tariff on China to 84%.

39. On April 9, 2025, the President issued Executive Order 14266, 90 Fed. Reg. 15,625, suspending certain reciprocal tariffs for 90 days but increasing the tariff on China to 125%, while leaving the 20% fentanyl-based tariff in place.

40. CBP implemented these tariff orders by directing changes to the HTSUS and requiring entries to be made under new tariff provisions.

41. On April 14, 2025, importers challenged these orders in *V.O.S. Selections*, 149 F.4th 1312. This Court held the orders unlawful; the Federal Circuit affirmed.

42. Although the Reciprocal Tariff Order and related modifications were challenged before this Court and the Federal Circuit, with both Courts holding that IEEPA did not authorize the tariffs at issue, CBP is still collecting all tariffs imposed in these Orders.

### C. Other IEEPA-Based Tariffs

43. Despite the IEEPA tariff holdings of this Court and the Federal Circuit, the President has continued issuing additional executive orders invoking IEEPA to modify or impose tariffs.

44. Plaintiffs seek remedial and declarative relief for only those orders the Federal Circuit has already held to be unlawful (collectively, the "Challenged Tariff Orders").

## II. CBP Implements the Tariffs.

45. CBP is charged with the assessment and collection of duties. *See* 19 U.S.C. §§ 1500, 1502.

46. The Harmonized Tariff Schedule of the United States ("HTSUS"), adopted in 1988, sets forth tariff classifications and duty rates. *See* 19 U.S.C. § 1202.

47. CBP classifies merchandise under the HTSUS and appraises imported goods according to statute and regulation. *See* 19 C.F.R. § 152.11.

48. The U.S. International Trade Commission publishes and maintains the HTSUS pursuant to presidential orders. *See* 19 U.S.C. §§ 1202, 3005 and 3006.

49. When goods enter the United States, CBP assesses duties based on HTSUS classification and the rates in effect, including the IEEPA-based duties, which were assigned additional HTSUS subheadings to allow CBP to collect these duties.

## III. CBP Liquidation of Plaintiffs' Customs Entries Is Not Protestable.

50. Liquidation is "the final computation or ascertainment of duties." 19 C.F.R. § 159.1.

51. Importers pay estimated duties at entry; CBP later finalizes classification, ap-

praisement, and the duty amount. *See* 19 U.S.C. § 1500.

52. Once CBP finalizes duty liability, it liquidates the entry and issues notice. *See* 19 U.S.C. § 1504(b).

53. CBP generally liquidates entries within one year and typically targets liquidation approximately 314 days after entry.

54. CBP may extend liquidation deadlines for good cause or lack of necessary information. *See* 19 U.S.C. § 1504(b).

55. Once liquidation occurs, and if protestable, importers have 180 days to file a protest. *See* 19 U.S.C. § 1514.

56. Not all liquidations are protestable. This Court has determined that liquidations are not protestable when the protests would hinge on the constitutionality of the duties assessed on the entries. *AGS v. CBP*, Consol. Ct. No. 25-00255, Slip Op. 25-154, at 6–7.

57. This Court has further determined that 28 U.S.C. § 1581(i) actions as the primary recourse for parties seeking refunds for duties ruled to be illegal and unconstitutional. *Id.*

58. In *AGS v. CBP*, the Court also separately determined that the defendants—parties that are identical to Defendants in this case—are estopped both "in [*AGS v. CBP*] and in related cases" from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs. *Id.* at 3–5.

59. The factual circumstances presented in the consolidated plaintiffs' pleadings in *AGS v. CBP* are substantively the same as those presented here.

IV. **Courts Have Determined that IEEPA Does Not Authorize Tariffs.**

60. The Challenged Tariff Orders solely cite IEEPA, 50 U.S.C. § 1701 et seq., the

National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, 19 U.S.C. § 2483, and 3 U.S.C. § 301, as authority for imposing tariffs.

61.     This Court and the U.S. Court of Appeals for the Federal Circuit have already determined that none of these statutes authorizes the President to impose tariffs.

62.     This Court and the U.S. Court of Appeals for the Federal Circuit have issued rulings consistent with the following propositions and observations:

- a. IEEPA's grant of powers to the President may be exercised only to address an "unusual and extraordinary threat" tied to a declared national emergency and may not be used for other purposes. 50 U.S.C. § 1701(b). *See V.O.S. Selections*, 149 F.4th 1320.

- b. IEEPA authorizes the regulation of certain financial and property transactions, not tariffs. 50 U.S.C. § 1702(a)(1)(A)–(C). *See id.* at 1335.

- c. IEEPA does not mention "tariffs," "duties," or any equivalent authority. *See id.* at 1330.

- d. IEEPA has never been amended, or previously interpreted, to authorize the imposition of tariffs. *See id.* at 1335.

- e. The Constitution vests tariff authority in Congress. *See id.* at 1322 (citing U.S. CONST. art. I, §§ 1, 8).

- f. Under the "non-delegation doctrine," delegations of legislative power require an intelligible principle. *See id.* at 1345 (citing *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482 (2025)). IEEPA does not contain an intelligible principle for tariff-setting. *See id.* at 1346.

      g.    Under the "major questions" doctrine, Congress must clearly authorize actions of vast economic and political significance. *See id.* at 1334–35 (citing *West Virginia v. EPA*, 597 U.S. 697, 716 (2022); *Biden v. Nebraska*, 600 U.S. 477, 505-06 (2023)). The setting of tariffs, which are a form of tax levied on imports, has vast economic and political significance, and thus cannot be implied from IEEPA. *See id.*

      h.    Reading IEEPA to authorize tariffs would violate the major-questions and non-delegation doctrines, and render the statute unconstitutional.

63.    The Supreme Court may also soon reach the same or similar determination on the lawfulness of the IEEPA tariffs.

## STATEMENT OF CLAIMS

### COUNT I: Defendants Have Collected and Continue to Collect Duties Ruled to Be Unlawful.

64.    Plaintiffs incorporate paragraphs 1-63.

65.    This Court and the Federal Circuit held in *V.O.S. Selections*, 149 F.4th 1312, that the President exceeded his authority by imposing the IEEPA tariffs.

66.    The Supreme Court may also soon reach the same or similar determination on the lawfulness of the IEEPA tariffs.

67.    The executive orders challenged here are materially the same as those invalidated in *V.O.S. Selections*.

68.    Defendants have collected and continue to collect duties pursuant to the IEEPA tariffs.

69. Plaintiffs seek a full refund of all IEEPA tariffs paid, whether previously paid or collected in the future.

70. To the extent Plaintiffs' customs entries subject to the IEEPA tariffs may be liquidated, Plaintiffs seek a declaration that this Court's estoppel ruling in *AGS v. CBP*, Consol. Ct. No. 25-00255, Slip Op. 25-154, at 3–5, applies and estops Defendants from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court:

1. Order Defendants to refund all IEEPA tariffs, whether previously paid or collected in the future, with interest as provided by law;

2. Declare that the Court's estoppel ruling in *AGS v. CBP* applies in this case and estops Defendants from objecting to court-ordered reliquidations of customs entries subject to the IEEPA tariffs;

3. Award Plaintiffs their costs and reasonable attorneys' fees; and

4. Grant such other relief as the Court deems appropriate.

Respectfully submitted,

/s/ Gregory Husisian

Gregory Husisian
Lindsey Zirkle
FOLEY & LARDNER LLP
3000 K Street, NW
Suite 600
Washington, D.C. 20007-5101

>(202) 945-6149 (GH)
>(202) 295-4182 (LZ)
>ghusisian@foley.com
>lzirkle@foley.com
>
>John Turlais
>Parker White
>FOLEY & LARDNER LLP
>777 E. Wisconsin Ave.
>Suite 3800
>Milwaukee, WI 53202
>(414) 297-5584 (JT)
>(414) 297-5388 (PW)
>jturlais@foley.com
>pwhite@foley.com
>
>Hillary Leffue
>FOLEY & LARDNER LLP
>555 South Flower Street,
>Suite 3500
>Los Angeles, CA 90071
>(213) 972-4637
>hleffue@foley.com
>
>*Steven Madden, Ltd. et al.*

Dated: December 19, 2025